IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EMILLIO ROBERTS, | ) |
| | ) |
| Plaintiff, | ) |
| | )   1:05cv1006(LMB/LO) |
| v. | ) |
| | ) |
| ARLINGTON PUBLIC SCHOOLS | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

This memorandum explains in detail the reasons for the Court granting the defendant, Arlington Public Schools' (APS) previously filed Motion for Summary Judgment.

I. Procedural Background

On August 26, 2005, the plaintiff, Emilio Roberts (Roberts) then acting pro se, filed an employment discrimination complaint against APS alleging that it had discriminated against him on the basis of his "race, African American, and color, Black."[1] Specifically, he alleged that he had been subjected to a hostile work environment, disparate treatment, and wrongful termination due to his race and color. He also included a claim of retaliation and alleged a class action on behalf of similarly situated employees. However, he withdrew his retaliation claim

---

[1] Although the plaintiff indicated in his administrative complaint that he was the victim of discrimination based on both race and gender, he only alleges race-based discrimination in this civil action. Therefore, the Court has not addressed any gender discrimination issues.

in his answer to the defendant's interrogatories and the class action was dismissed by an Order entered December 2, 2005.

In its Motion for Summary Judgment, APS argues that Roberts has failed to make out a prima facie case of discrimination under any of his theories because he has produced no evidence, other than his subjective opinion, to support any of his claims. APS also maintains that even if Roberts had produced sufficient evidence to support his claims of a hostile work environment and disparate treatment, the particular conduct about which he complains would not as a matter of law constitute either a hostile work environment or disparate treatment based on race discrimination. Lastly, APS argues that Roberts has presented no evidence to support his wrongful termination claim, and fails to rebut APS' description of his work record, which included previous reprimands for tardiness and absenteeism, failure to file paper work timely, a parent complaint in October 2004 concerning a child who was not accounted for, and the final incident when he left the school without advising the Central Office.

II. Factual Background

No material facts are in dispute in this litigation. The uncontested facts establish that Roberts was initially hired by the APS in September 1998 as a part-time lunchroom monitor and in 2000, he was hired for a second part-time position as an aide for

the Extended Day Program at Kenmore Middle School.  APS runs the Extended Day Program as a before and after-school program in several elementary and middle schools.  The Extended Day Program is centrally managed by its Director, who at all times relevant to this lawsuit was Patti Macie ("Macie"), a white female.  Her Assistant Director was John Holmes, an African-American male.

In September 2001, Macie promoted plaintiff to be the Check-In Supervisor at Kenmore Middle School, based on Holmes' recommendation.  Plaintiff's duties included responsibility for managing the day-to-day operations of the program in accordance with Virginia licensing standards; overseeing the supervision and accountability of students; supervising and training staff assigned to the program; communicating with the Director of Extended Day, parents, and the administration of the school; and maintaining accurate records.  In addition, if a student did not report to the program, the supervisor had to notify the student's parents and the Central Extended Day Office and continue to try to locate the student.  All employees of the Extended Day Program, including all employees in the Check-In Program, had to call the Central Extended Day Office to report if they were going to be absent or tardy.  Because he was a supervisor, if Roberts were absent, Holmes himself would go to Kenmore Middle School to ensure that the program was prepared to handle the students until an appropriate substitute could be found.  From 2000 through

2003, Holmes directly supervised the middle school Check-In Program. However, in 2003, Macie took over that responsibility. From that point on Roberts' relationship with his employer changed. In Roberts' opinion, Macie created a hostile work environment and treated the African-American employees less favorably than other racial groups. On April 30, 2004, Roberts was fired after he arrived at work on April 28, 2004 over an hour late and failed to notify the Central Office about his tardiness.

On December 30, 2004, Roberts filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) alleging that he was the victim of race and sex discrimination. On May 27, 2005, the EEOC closed the administrative complaint finding insufficient evidence to conclude that any violation of Title VII had occurred. Roberts, acting pro se, timely filed an employment discrimination complaint in this court on August 26, 2005. He eventually retained counsel who represented him throughout the discovery process and filed the opposition to the summary judgment motion.[2]

III. Discussion

In considering a motion for summary judgment the Court must consider all the evidence in the record and draw all reasonable inferences in favor of the non-moving party. The Court may not

---

[2] Although the opposition was filed inexcusably late, the Court has considered it.

**4**

make credibility findings or weigh the evidence.  <u>Lytle v. Household Mfg. Inc.</u>, 494 U.S. 545, 554-55 (1990).  After considering this evidence, summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P 56.  A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The party opposing summary judgment may not rest upon his allegations or denials, but must present evidence beyond his opinion.  A "mere scintilla" of evidence is insufficient to overcome summary judgment.  <u>Anderson</u>, 477 U.S. at 248-52.  Likewise, the plaintiff's speculation is not enough to withstand a motion for summary judgment.  <u>See</u> <u>Ash v. United Paral Serv., Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986).

    A.  <u>Hostile Employment Environment and Disparate Treatment</u>

Roberts' hostile employment environment and disparate treatment claims overlap.  Roberts alleges that he and other black employees were treated differently from employees of other races.  Specifically, he claims that during staff meetings, Macie spoke demeaningly to the African-American staff.  When asked to specify what he meant by this allegation, plaintiff was unable to give specific examples, explaining only that "she would speak down to us" and would not acknowledge the African-American

employees' opinions. Plaintiff provided no examples of any specific statements by Macie in which she used racially derogatory language or any other specifics as to what she said or how she treated the African-American staff. In his affidavit submitted in support of his opposition to the defendant's Motion for Summary Judgment, plaintiff provided the following additional specific examples of hostile work environment and disparate treatment.

    1. Although it was common practice for Macie to acknowledge promotions at staff meetings with extended day program supervisors, in the September 2001 meeting, Macie failed to acknowledge plaintiff's promotion but did acknowledge the promotion of a white male supervisor.

    2. In August 2002, Macie threatened to fire plaintiff if he did not attend a pre-school year set-up program. He claims that Macie was treating him differently because she had allowed other employees to return to work after the school year began.[3]

    3. One time in 2002 Macie verbally reprimanded plaintiff and Keith Whitney, another African-American male supervisor, for wearing hats inside the school but that she did not discipline a white male employee for the same conduct.[4]

---

[3] He does not specify who these other employees were or identify their race.

[4] Roberts did not identify the white male, Keith Whitney did not provide confirmation of this incident, and there is no evidence

4. Macie used a disparaging and nasty tone when speaking with African-American staff members and dismissed comments from African-American staff but would "engage" in dialogue with white staff.

To survive summary judgment Roberts must establish that a reasonable jury could find from the evidence in the record four facts: 1) that the specific conduct at issue was unwelcome; 2) that the unwelcome conduct was based on race; 3) that the unwelcome conduct was sufficiently pervasive as to create an abusive working environment; and 4) that some basis exists for finding the employer liable for the abusive environment.  White v. BFI Waste Services, LLC, 375 F.3d 888, 296-97 (4th Cir. 2004).

As this record demonstrates, other than plaintiff's personal belief that Macie was hostile towards African-American staff and treated them differently than other racial groups, the only other evidence he offered to support his hostile work environment and disparate treatment claims was an excerpt from the deposition of James Dare, another African-American supervisor of a middle school Extended Day program.  The only comment Dare had about Macie's management style was that it was negative, however, he did not equate that negativism to race discrimination.

> Q. Did people talk to you about your behavior

---

in the record of the alleged reprimand having material effect on the conditions of Roberts' employment.

>    or your supervision?
>
>    A. No I never had any problems with supervisor [sic] or anything.  Like I said I felt I had, out of the five middle schools, the best program.
>
>    Q. . . . Other than the fact that things started to ramp up in terms of meetings with the principal and the complaints to Patti Macie from the principal, you don't have specific information that you think this was discriminatory?
>
>    A. I mean - - I mean every time we would meet, it was always negative.  To me I'm being supportive.  So if you're my supervisor, you are going to support me if I was a problem.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Pltf.'s Opp.), Ex. D at 34.

Dare's response to the question about discrimination does not help Roberts' case, as a negative management style is not equivalent to racial discrimination.  Roberts also included portions of Holmes' deposition.  Holmes confirmed Roberts' claim that he and Macie had personality clashes and that two other African-American supervisors, James Dare and Keith Whitney, preferred Holmes, who was African-American, as a supervisor to Macie.  However, he denied hearing any of these three men claim that they were being discriminated against by Macie or anyone else on the basis of their race.  Id., Ex. C at 27-28.  Given that Roberts' only evidence of a racially hostile environment or disparate treatment is his own subjective interpretation of the employer's conduct, his evidence is not sufficient to withstand summary judgment.

Moreover, even if plaintiff could substantiate that Macie disparaged African-American staff and failed to praise their promotions or listen to their suggestions, such conduct would not rise to the level of hostility and pervasiveness required by the law for a case of hostile work environment or disparate treatment.  As the defendant properly argues, "Title VII does not prohibit all verbal or physical harassment in the work place." Nichols v. Caroline County Bd. of Educ., 123 F. Supp 320, 326 (D. MD. 2000).  To be actionable under Title VII, the unwelcome conduct or disparate treatment must make a material difference to the terms and conditions of the employee's working environment. That is not the case here.

Lastly, an employer cannot be held liable for a hostile work environment or disparate treatment if it has not been placed on notice of activities by its employees causing such environment. Katz v. Dole, 709 F. 2d 251, 256 (4th Cir. 1983).  Plaintiff has not responded to this argument in his opposition, and there is not a scintilla of evidence indicating that plaintiff or anyone else at any time before plaintiff's termination complained to Macie's supervisor or to anyone in the defendant's human resources department about racially-based hostility, discriminatory conduct, harassment, or disparate treatment.[5]  For

---

[5] Defendant had an established administrative process through which employees were encouraged to report any discriminatory conduct.  See Defendant's Motion for Summary Judgment, (Def.

9

these reasons, summary judgment has been granted to defendant on plaintiff's claims of racially hostile work environment and disparate treatment.

   B.  <u>Wrongful Termination</u>

   Roberts alleges that his termination on April 30, 2004, was motivated by race discrimination.  Because Roberts has no direct evidence to support his claims that APS fired him on account of his race, his allegation of wrongful termination must be evaluated under the indirect proof regime established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  To make out a <u>prima facie</u> case of wrongful termination, a plaintiff must establish:  1) membership in a protected class; 2) that he was terminated; 3) that he was performing his job duties at a level meeting the employer's legitimate expectations when he was terminated; and 4) that the position from which he was terminated either remained open or was filled by someone outside the plaintiff's protected class.[6]

   If the plaintiff can establish a prima facie case of discrimination, a burden of production - not proof or persuasion

---

Motion) Ex. 24 at pages 11-14.  (This exhibit is the APS's submission to the EEOC.  The pages are not numbered, however, by physically counting the pages the Court has determined the relevant page numbers for the APS employee handbook).

   [6]   This prong must usually be established but is not absolutely required for a <u>prima facie</u> showing if the other three factors have been clearly met.  <u>See</u> <u>Mills v. Dell, Inc.</u>, 429 F.3d 480, 485-488 (4th Cir. 2005).

- shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its decision to terminate the plaintiff.  Id. at 802.  If the defendant meets its burden of production, the plaintiff must then prove, by a preponderance of the evidence, that the defendant's articulated reasons are a pretext for discrimination.  Nevertheless, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Id.

Roberts satisfies the first two and fourth elements of the prima facie case in that he is an African-American male who was fired, and his position was filled by a Hispanic female, someone outside his protected class.  However, Roberts cannot establish the third prong, that is, that he was performing his job at a level meeting the employer's satisfaction.

Although the record reflects that Roberts received several favorable evaluations, there were also consistent problems with his performance, particularly in the areas of attendance, punctuality, and timely filing reports.  For example, in his May 31, 2001, evaluation of plaintiff, Holmes noted a successful year, but in a memo dated February 13, 2002, he reprimanded Roberts for excessive absences, specifically for being absent for all or part of 12 days since September 4, 2001.  In that same memo, Holmes reminded Roberts that absences affected the safety

and well-being of the program.  Def. Motion Ex. 12.  An e-mail dated May 13, 2002, from Macie to Holmes documents that Roberts was an hour late that day and had not called in to the Central Office.  She found out about his tardiness because one of Roberts' aides called the office to ask for guidance when a tornado alert was issued.  In that same e-mail Marcie reported complaints about the degree to which Roberts was supervising students and expressed concerns that he might be leaving work early.  Id. Ex. 13.  As a result of these concerns, Macie required Roberts to telephone at the start and close of each day, that is, at 2:00 p.m. and 6:00 p.m. each day.  On May 24, 2002, Macie e-mailed Holmes to complain that Roberts' call had been late one day and that he did not seem to appreciate the requirement that as a supervisor he had to be at work on time.  Id. Ex. 14.  During this period Macie orally warned Roberts that he was "pushing it."  Holmes' May 30, 2002 evaluation of Roberts includes the comment, "He was not successful in completing mandatory training hours.  In addition, [Roberts] has not met deadlines when submitting information to the Central Extended Day Office."  Id. Ex. 15.[7]

A year later, the absence issue continued.  In an e-mail

---

[7] As Holmes testified during his deposition "in Mr. Roberts' case, I guess the main concern was absences and not submitting paperwork on time."  Def. Motion Ex. 3 at 20.  Although Holmes also felt he could work with Roberts on these problems, he once considered firing him for tardiness.  Id. at 21.

dated May 16, 2003, Macie complained to Holmes that Roberts had been absent nine times that year, including five Mondays and two Fridays and asked Holmes to counsel Roberts about absenteeism. <u>Id</u>. Ex. 17. On October 29, 2003, Holmes strongly reprimanded Roberts for failing to notify a parent whose child left the program without permission.

> On Monday, October 27, 2003 when I was covering the close out of your program, Mr. Williams a parent approached me with a concern that his son did not report to Check-In on Friday, October 24, 2003. His son left school with a friend without permission. He was concerned that a staff person did not inform him that his child did not report to Check-In that day.
>
> I informed you of Mr. Williams' concern on Tuesday, October 28, 2003.
>
> Our program is an accountability program and all of the students that are enrolled must be accounted for daily.
>
> Under no circumstances should this occur again, if a student does not sign-in at Check-In and there is no note or voice mail message about a student, you should follow these procedures:
>
>   - Check early sign out sheet, check the sign out list in the clinic
>   - Do an all call for the student over the PA
>   - Call parent
>   - Notify the Extended Day Office
>   - Notify the administrator of your building
>
> You stated to me that this would not happen again.

<u>Id</u>. Ex. 19.

The precipitating incident that led to Roberts' termination occurred on April 28, 2004, when Roberts was over an hour and a half late in arriving at Kenmore School and failed to report his

13

tardiness to the Central Office.  The accounts of what happened that day are documented by witnesses on the scene, and the facts are essentially admitted by the defendant.  <u>See</u> Def. Motion Ex. 20 and 21.  By a letter dated April 30, 2004, Roberts was terminated for failing to notify the Central Office that he was not going to be at work on time.  This conduct was described as

> "failing to meet the primary expectation of your position as a Supervisor of Kenmore Check-In.  You failed to ensure the safety and accountability of the students in the Check-In program because you were absent from the Kenmore campus and did not report this absence to the Central Extended Day Office.  This is not the first time that you have been counseled about this."  <u>Id</u>. Ex. 22.

Roberts does not dispute any of the facts surrounding his termination, and admits in his affidavit that he did not call the Central Office.

> "I did not contact the Central Office regarding my situation, because I knew that Macie would treat me unfairly and subject me [to] overly harsh treatment, given her prior actions towards me and other African-American employees.  Moreover, I reasonably believed that my staff was adequately trained to oversee the Check-In program in my absence."  Pltf.'s Ex. B at ¶ 11.

Given the undisputed fact that Roberts had failed to report his tardiness to the Central Office and the clear evidence that he was unwilling to follow the reasonable directions of his direct supervisor, he cannot establish that he was performing his job to his employer's satisfaction.  Therefore, he fails to satisfy the third element required for a <u>prima facie</u> case of

wrongful termination based on race.

Even if plaintiff were deemed to have made out a <u>prima facie</u> case of wrongful termination, he presents no evidence, other than his personal opinion, that his race was a motivating factor in Macie's decision to terminate him.  For these reasons, summary judgment for the defendant is appropriate.

Entered this 27th day of July, 2006.

                                                  /s/
                                    Leonie M. Brinkema
                                    United States District Judge

Alexandria, Virginia